UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WINTICE GROUP, Inc., | ) |
| Plaintiff, | ) 2:08-CV-01827-PMP-PAL |
| v. | ) |
| DESTINY LONGLEG, et al., | ) ORDER |
| Defendants. | ) |

      Presently before the Court is Plaintiff Wintice Group, Inc.'s Motion for Summary Judgment (Doc. #110) and Motion for Permanent Injunction (Doc. #112), filed on May 20, 2010.  Defendants Destiny Longleg and David Horton filed Oppositions (Doc. #118, #119) on June 22, 2010.  The Court held a hearing on these motions on August 30, 2010.

**I. BACKGROUND**

      Wintice owns and operates the website men4rentnow.com, which charges users a fee to advertise for personal services, such as escorts and masseurs.  (Pl.'s Mot., Ex. 2 at 2.)  In 2007, Wintice applied to register the service mark MEN4RENTNOW.COM with the U.S. Patent and Trademark Office ("PTO"), and the PTO registered the mark in 2009.  (Pl.'s Mot., Ex. 1; Pl.'s Mot. Prelim. Inj. (Doc. #25), Ex. A.)  From the website's inception in 2003 through 2008, Wintice spent over $1 million to build the men4rentnow.com and m4rn.com brands through advertising and event sponsorships.  (Pl.'s Mot., Ex. 2 at 2.)

      Defendant Destiny Longleg ("Longleg") created an advertising account at men4rentnow.com in June 2004 using the email address destinylongleg@hotmail.com.  (Pl.'s Mot., Ex. 2 at 3.)  Longleg created another account in April 2007 using the email

address destinylongleg@earthlink.net. (Id.) Defendant Horton created a client account on men4rentnow.com in August 2004 using the email address lawfirm@lvcoxmail.com. (Id.)

In May 2007, a Wintice customer reported he had received spam from an advertising account at men4rentnow.com. (Id.) Wintice's technology consultant investigated the incident and determined that 521 spam messages sent to Wintice customers originated from one of Longleg's account at men4rentnow.com. (Id. at 3-4; Pl.'s Mot., Aff. of Matt Lauer at 2-3.) The spam directed Wintice customers to a "new and free" classified advertising service located at men2rentnow.com. (Pl.'s Mot., Ex. 2 at 3-4.) Longleg owned and operated men2rentnow.com. (Id. at 4; Pl.'s Mot., Aff. of Matt Lauer at 3.) After discovering these spam emails, Wintice implemented a spam blocking tool on men4rentnow.com, and intercepted 343 additional spam emails originating from Longleg's account. (Pl.'s Mot., Ex. 2 at 4, Aff. of Matt Lauer at 3.) Based on the spam emails, Wintice investigated the men2rentnow.com website. (Pl.'s Mot., Ex. 2 at 4.) Wintice discovered the men2rentnow.com site copied many of the men4rentnow.com website's features, including the layout, menus, sign up procedure, button placement, banner, and terms of use. (Id.) Contained within the metatags for the men2rentnow.com website was "men4rentnow." (Pl.'s Mot., Ex. 6.) Longleg admits that he used the phrase men4rentnow on the men2rentnow.com website for three months in 2007. (Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. (Doc. #118), Aff. of Destiny Longleg ("Longleg PI Aff.") at 1.)

Wintice sent a cease and desist letter to Longleg and notified the hosting and bill processing companies for men2rentnow.com that Longleg was infringing Wintice's copyright and trademark rights. (Pl.'s Mot., Ex. 2 at 4-5, Ex. 3.) Wintice also terminated Longleg's accounts on men4rentnow.com. (Pl.'s Mot., Ex. 2 at 5.) In response to Wintice's notice, the bill processing company indicated it no longer would process men2rentnow.com's bills, and the hosting company indicated it would deactivate men2rentnow.com unless Longleg removed all infringing elements. (Id.) Longleg

2

1  voluntarily deactivated men2rentnow.com and moved it to another hosting company.  (Id.;
2  Pl.'s Mot., Ex. 4.)  Wintice notified the second hosting company of the infringement, but
3  did not hear back from the company.  (Pl.'s Mot., Ex. 2 at 5, Ex. 3.)  Wintice checked the
4  men2rentnow.com website and found no activity.  (Pl.'s Mot., Ex. 2 at 5.)  Wintice thus
5  concluded Longleg had ceased any infringing activity.  (Id.)
6         In 2008, Wintice discovered a blog entry on the website men4rentnow.org which
7  made disparaging comments about Wintice.  (Id. at 6.)  The men4rentnow.org website
8  directed traffic to the website boys2rentnow.com.  (Id.)  Longleg owned both of these
9  websites.  (Id.)  Longleg also owned the website b2rn.com.  (Pl.'s Mot., Ex. 5.)  The
10 boys2rentnow.com website advertised male escorts.  (Pl.'s Mot. Prelim. Inj., Ex. E.)
11 According to Longleg, the boys2rentnow.com and boys2rent.com websites never have used
12 in any way "men4rentnow.com" or "men4rentnow."  (Longleg PI Aff. at 1.)  However,
13 Longleg admits he put the phrase "men4rent" on the boys2rentnow.com website in April
14 2008, which he claims he did upon learning that Plaintiff was using his unique phrase
15 "boys2rent" on its website.  (Id.)  Longleg states that he removed the phrase men4rent from
16 the boys2rent.com website after Plaintiff filed suit.  (Defs.' Opp'n to Pl.'s Mot. Summ. J.,
17 Aff. of Destiny Longleg at 2.)  Longleg avers that Plaintiff has stymied his efforts at
18 advertising the boys2rent.com website, including advising the owners of another website
19 that Plaintiff would terminate an advertising contract if the third party allowed Longleg to
20 advertise on the same website.  (Longleg PI Aff. at 2.)  Longleg denies he has acted in bad
21 faith or intended to affiliate his websites with Plaintiff.  (Id.)  Longleg contends he does not
22 want to be affiliated with Plaintiff, as doing so would harm his reputation as he has "found
23 that people do not like [Wintice]."  (Id.)
24         Wintice claims that since Longleg began spamming its customers in May 2007,
25 Wintice has suffered a 23% reduction in paid advertising accounts.  (Pl.'s Mot., Ex. 2.)
26 Plaintiff presents an exhibit depicting the traffic for the two websites which shows that

3

men4rentnow.com had generally steady traffic from January through April 2008, with an increase in May 2008, followed by a downward trend in traffic from May 2008 through January 2009. (Pl.'s Mot., Ex. 7.) The boys2rentnow.com site experienced rather steady traffic during this time, with a slight uptick in traffic from November 2008 to January 2009. (Id.)

Wintice commenced an arbitration with the Internet Corporation of Assigned Names and Numbers. (Pl.'s Mot., Ex. 2.) Wintice discovered further spam aimed at its customers directing them to the boys2rentnow.com website. (Id.) Wintice thus decided to bring a civil action in which it could seek injunctive relief. (Id.) Wintice brought suit in this Court, asserting claims for unfair competition under the Lanham Act for false designation of origin and false advertising, cybersquatting, deceptive trade practices, common law trademark infringement, defamation, and intentional interference with prospective economic advantage. Longleg filed a counterclaim for libel based on the allegations in the First Amended Complaint.

Wintice previously moved for a preliminary injunction in this case, requesting Defendants be enjoined from using confusingly similar websites such as men4rentnow.org, men2rentnow.com, and boys2rentnow.com. The Court granted in part and denied in part the motion. The Court noted that:

> Defendants state that they either have not engaged in much of the conduct alleged by Plaintiff, or have ceased doing so, and further agree they will not engage in conduct which would infringe on Plaintiff's trademarks, including, MEN2RENTNOW, MEN4RENTNOW.COM, and M4RN. Defendants further argue that they seek only to continue the use of the domain names BOYS2RENTNOW.COM, BOYS2RENTNOW.NET, and B2RN, and that such conduct does not infringe Plaintiff's trademarks. The Court agrees.

(Order (Doc. #37).) The Court therefore enjoined Defendants from using Plaintiff's trademark or confusingly similar variations thereof, including men4rentnow.com, men4rentnow, or M4RN, but did not enjoin the use of boys2rentnow.com,

4

boys2rentnow.net, or b2rn.com.

The Court subsequently dismissed Longleg's counterclaim. (Order (Doc. #62).) The Court also awarded costs in the amount of approximately $13,000 in favor of Plaintiff in relation to this counterclaim. (Order (Doc. #76).)

The parties thereafter engaged in a settlement conference before the Magistrate Judge and reached a settlement, placing the terms of the settlement on the record. (Tr. of Proceedings (Doc. #92).) The settlement fell through, and in April 2010, Plaintiff moved to reinstate the case against both Horton and Longleg. Neither Horton nor Longleg responded to the motions to reinstate the case, and the Court granted the motions. (Order (Doc. #104).)

Plaintiff thereafter filed a motion for an order to show cause why Horton and Longleg should not be held in contempt for violating the preliminary injunction. Plaintiff asserted that Defendants had engaged in several acts violating the preliminary injunction, including migrating their websites' content from the United States to Canada, and selling the men2rentnow.com website to an Australian registration company. Plaintiff further contended Defendants purchased several more infringing domain names after entry of the preliminary injunction and during the bankruptcy court's automatic stay, including men4rentboys.com, men4rentboy.com, and menforrentboys.com. Longleg responded that Plaintiff had presented no proof the content ever was located in the United States. As to the transfer of the men2rentnow.com website, Longleg argued he did not transfer it, he abandoned it, at which point another company obtained it.

The Court denied the motion, but modified the preliminary injunction to require Defendants to preserve in original form any documents or data relating to the websites boys2rentnow.com, boys2rentnow.net, b2rn.com, men4rentnow.org, men2rentnow.net, men2rentnow.com, and men2rentnow.org. (Order (Doc. #116).) The Court further ordered that Defendants "shall cease any operation of the foregoing seven websites and shall take no

further action to transfer or encumber them."

Plaintiff now moves for summary judgment and for a permanent injunction, arguing Defendants deliberately have copied and traded upon Plaintiff's federally registered mark, men4rentnow.com, by operating websites offering the same services under confusingly similar names. Plaintiff also moves for summary judgment on its defamation claim, contending Defendants defamed Plaintiff by associating the word "boy" with its website, thus inferring Plaintiff supports activities related to underage males. Plaintiff also seeks permanent injunctive relief preventing Defendants from continuing this conduct in the future.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

Plaintiff moves for summary judgment on its Lanham Act claims of false designation of origin and false advertising in counts one and two of its First Amended Complaint. Plaintiff contends Defendants admittedly copied Plaintiff's mark and the contents of its website and engaged in other conduct designed to deceive Plaintiff's

6

customers into thinking Defendants' websites were associated with men4rentnow.com. Plaintiff also moves for summary judgment on its defamation claim in count six. Plaintiff argues that by associating "boys2rent" with Plaintiff's men4rent websites, Defendants have defamed Plaintiff by suggesting Plaintiff permits advertising for services by individuals under the age of eighteen.

Defendants argue that Plaintiff has not met its initial burden of demonstrating no genuine issues of material fact remain. Defendants contend that with respect to the Lanham Act claims, Defendants never have used Plaintiff's actual mark, men4rentnow.com, and Plaintiff has produced no evidence of likelihood of confusion. Defendants also argue Plaintiff has failed to establish that at all relevant times its mark was registered. Defendants argue that although Plaintiff tries to claim "men4rent" is its mark, the actual registered mark is men4rentnow.com, and the phrase men4rent is a common phrase in the public domain.

As to the defamation count, Defendants argue that Plaintiff's own website contains references to boys and thus this claim has no merit, as Plaintiff has brought on itself any ridicule or contempt by reference to boys for rent. Defendants further contend that issues of fact remain as to whether Defendants knew the reference to boys was false or acted with reckless disregard for the truth. Finally, as to damages, Defendants argue that other factors, such as the economy, may have caused the alleged drop off in revenue.

**A. Lanham Act**

The Lanham Act "prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services." Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1036 (9th Cir. 2005). Pursuant to the Lanham Act, any person who believes he has been damaged may bring a civil action against:

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of

7

> fact, which–
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a).  "The test for false designation under the Lanham Act . . . is whether there was a likelihood of confusion" among consumers as to the source of the goods or services offered by the parties.  Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000). The Ninth Circuit has set forth several factors to consider in making this determination:

> (1) strength of the mark;[] (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent in selecting mark; and (8) likelihood of expansion.

Id. (footnote omitted) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)).

### 1.  Men2rentnow.com

No genuine issue of material fact remains that Longleg's use of the men2rentnow.com website was likely to confuse consumers as to the source of services being offered at that website.  Plaintiff has presented unrebutted evidence that Longleg owned the men2rentnow.com website.  Plaintiff also has presented unrebutted evidence that Longleg used his men4rentnow.com account to spam Plaintiff's customers with emails urging them to visit the new free men2rentnow.com website.  The men4rentnow.com mark is a federally registered mark and thus is strong, and was known before registration amongst those customers whom Longleg spammed because they were Plaintiff's paying customers. The two websites offered similar services of advertising for male escorts.  The marks are similar, as the men2rentnow.com website is merely one character off from the registered men4rentnow.com mark and conveys a similar message as a whole.  The parties used

8

similar marketing channels, as both are web based.

As to actual confusion, Wintice received customer complaints regarding the spam emails. Longleg's intent in selecting the mark is obvious by the sheer similarity of the two websites' names and content, the fact that he was familiar with the men4rentnow.com mark as he was a paying customer of Plaintiff's, his use of his own men4rentnow.com account to spam Plaintiff's customers with advertising for his own very similarly named men2rentnow.com website, and his placement of men4rentnow in his website's metatags.[1] No genuine issue of material fact remains that the men2rentnow.com website was likely to cause consumer confusion over the source of the website.[2]

However, a genuine issue of material fact remains as to whether Longleg's conduct caused any damages. Plaintiff asserts it has lost twenty-three percent of its paid advertisers since Longleg spammed its customers in 2007. However, Plaintiff presents no evidence to support causation as to damages other than timing. Other factors may have impacted the decline in Plaintiff's subscriptions. Plaintiff's exhibit showing web traffic between its website and boys2rentnow.com does not demonstrate how much revenue Plaintiff may have lost due to Longleg's operation of the men2rentnow.com website. Moreover, it does not show data prior to January 2008, but Longleg ceased using the men2rentnow.com website in 2007. Further, the exhibit shows rather steady website traffic at men4rentnow.com from January through April 2008, with an increase in May 2008, followed by a downward trend in traffic from May 2008 through January 2009. The same exhibit shows steady traffic for boys2rentnow.com until a slight uptick in November 2009.

---

[1] Longleg's argument that the phrase "men4rent" is in the public domain is therefore unavailing in relation to the men2rentnow.com website. Longleg used the phrase "men4rentnow" in the metatags for the men2rentnow.com website, not just the phrase "men4rent."

[2] Neither party presented evidence related to the purchaser care factor. The evidence related to expansion is equivocal. Longleg ceased using the men2rentnow.com website in 2007. However, he moved the content to other websites.

The uptick in Longleg's website does not correlate to the downtrend in Plaintiff's traffic, suggesting other factors might be at play in the differences in web traffic beyond Longleg's activity. The Court therefore will grant partial summary judgment as to likelihood of confusion with respect to this website, but will deny summary judgment as to causation of damages.

### 2. Men4rentnow.org

With respect to Longleg's men4rentnow.org website, the domain name incorporates nearly all of Plaintiff's mark except it changes .org for .com, but Plaintiff has not presented evidence that this website ever offered similar services. The evidence presented shows Longleg used this website for his blog in which he criticized Plaintiff. Plaintiff has not presented evidence Longleg used the site as a similar business such that consumers would be confused, or that consumers would be confused about whether Plaintiff endorsed or was associated with a website that was critical of Plaintiff.[3] The Court therefore will deny summary judgment as to this website.

### 3. Boys2rent websites

The boys2rentnow.com, boys2rent.com, and b2rn.com websites offered similar services in the form of male escort advertising. However, the website domain names are not as similar to Plaintiff's registered mark, men4rentnow.com, as the men2rentnow.com website. "Boys2" is fairly different than "men4,"[4] and the Court was not inclined to grant

---

[3] Enjoining Longleg from using the site to engage in non-commercial speech also may run afoul of the First Amendment. See Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1017 (9th Cir. 2004) (holding that website at nissan.com that was critical of Nissan Motor Company was informational, not commercial speech, and court could not enjoin such speech without violating the First Amendment). Plaintiff did not argue in its motion that the men4rentnow.org website created initial interest confusion. See id. at 1018.

[4] Indeed, in its defamation count, Plaintiff contends the use of the word "boys" in connection with its website defames it, thus suggesting material differences between the word "boys" and "men" in the context of Plaintiff's claims under the Lanham Act.

injunctive relief on this website earlier in this case.  The boys2rent.com and b2rn.com names are even less similar to Plaintiff's mark.  Plaintiff has presented no evidence of actual confusion in relation to these websites.  The Court will deny summary judgment as to the boys2rent websites.

### 4.  Defendant David Horton

Plaintiff presents no evidence of Defendant David Horton's participation in any of the alleged activity.  The Court will deny the motion as to Defendant David Horton.

Accordingly, the Court will grant partial summary judgment in Plaintiff's favor to the limited extent that Longleg's use of the men2rentnow.com website was likely to cause consumer confusion.  The Court will deny the motion in all other respects.

### B. Defamation

Although Plaintiff moves for summary judgment on its defamation count, it does not cite legal authority or factual evidence in support, and Plaintiff therefore consents to denial of the motion.  See LR 7-2(d).  Plaintiff has failed to show the absence of a material fact on this claim.  Moreover, Longleg presents evidence that Plaintiff's own website refers to boys for rent. (Defs.' Opp'n, Ex. B (inviting visitors to "[f]ind local rent boys")).  The Court will deny the motion for summary judgment as to Plaintiff's defamation claim.

## II.  MOTION FOR PERMANENT INJUNCTION

Plaintiff moves for a permanent injunction, seeking to enjoin Defendants from using Plaintiff's trademark or confusingly similar variations thereof; registering, owning, leasing, selling, or trafficking in any domain names containing Plaintiff's mark or confusingly similar variations thereof, including specified domain names; and transferring all infringing domain names to Plaintiff.

Defendants respond that they currently are not committing any act of which Plaintiff complains, and thus no injunction is necessary.  Defendants contend the balance of hardships tips in their favor, as Plaintiff is attempting to stamp out competition, third parties

rely on the free advertising offered at Defendants' websites, and shutting down Defendants' websites will cause irreparable harm to their goodwill.

To obtain permanent injunctive relief, a plaintiff must show (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the "public interest would not be disserved by a permanent injunction." Cal. ex rel. Lockyer v. U.S. Dep't of Agric., 575 F.3d 999, 1019-20 (9th Cir. 2009) (quotation omitted). "Actual success on the merits of a claim is required for a permanent injunction." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 881 (9th Cir. 1999). Injunctive relief is "the remedy of choice for trademark and unfair competition cases," because no adequate remedy at law exists for "the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). Demonstration of a likelihood of confusion is "sufficient grounds for an injunction under the Lanham Act," both to protect the plaintiff and the consuming public. Pac. Telesis Group v. Int'l Telesis Commc'ns, 994 F.2d 1364, 1369 (9th Cir. 1993); see also Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 993-94 (9th Cir. 2009).

Plaintiff has demonstrated no genuine issue of material fact remains that Longleg created a likelihood of confusion in relation to the men2rentnow.com website, and thus an injunction is appropriate to remedy Longleg's acts of unfair competition. The Court therefore will permanently enjoin Longleg, his respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from:

(1) using Plaintiff's trademarks, including but not limited to MEN4RENTNOW, MEN4RENTNOW.COM, and M4RN, or confusingly similar variations thereof, alone or in combination with any other words, letter strings, phrases or designs, in commerce or in connection with any business;

(2) expressly or impliedly representing himself or any of his officers, agents,

servants, employees and/or all other persons acting in concert therewith, as representatives of Plaintiff;

(3) expressly or impliedly representing to third parties that his activities, or the activities of his officers, agents, servants, employees and/or all other persons acting in concert therewith, are affiliated with or endorsed by Plaintiff;

(4) expressly or impliedly representing to third parties that his services are in any way affiliated with or endorsed by Plaintiff; and

(5) registering, owning, leasing, selling, or trafficking in any domain names containing Plaintiff's marks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs, including but not limited to Men2RentNow.com.

This Permanent Injunction does not apply to the websites Boys2RentNow.com, Boys2Rent.com, Boys2RentNow.net, or B2RN.com.  The Permanent Injunction also does not apply to the website men4rentnow.org so long as Longleg does not use that website in a manner that creates a likelihood of confusion as to Plaintiff's endorsement of or association with that website or any services offered at that website, or Plaintiff's endorsement of or association with services offered at websites linked to the men4rentnow.org website.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Wintice Group, Inc.'s Motion for Summary Judgment (Doc. #110) is hereby GRANTED in part and DENIED in part.  The motion is GRANTED in that no genuine issue of material fact remains that Defendant Destiny Longleg's use of the men2rentnow.com website created a likelihood of confusion as to the source of services offered at that website.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiff Wintice Group, Inc.'s Motion for Permanent Injunction (Doc. #112) is hereby GRANTED in part and DENIED in part.  The

motion is granted as to Defendant Destiny Longleg as follows:

Defendant Destiny Longleg, his respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, are hereby permanently enjoined from:

(1) using Plaintiff's trademarks, including but not limited to MEN4RENTNOW, MEN4RENTNOW.COM, and M4RN, or confusingly similar variations thereof, alone or in combination with any other words, letter strings, phrases or designs, in commerce or in connection with any business;

(2) expressly or impliedly representing himself or any of his officers, agents, servants, employees and/or all other persons acting in concert therewith, as representatives of Plaintiff;

(3) expressly or impliedly representing to third parties that his activities, or the activities of his officers, agents, servants, employees and/or all other persons acting in concert therewith, are affiliated with or endorsed by Plaintiff;

(4) expressly or impliedly representing to third parties that his services are in any way affiliated with or endorsed by Plaintiff; and

(5) registering, owning, leasing, selling, or trafficking in any domain names containing Plaintiff's marks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs, including but not limited to Men2RentNow.com.

This Permanent Injunction does not apply to the websites Boys2RentNow.com, Boys2Rent.com, Boys2RentNow.net, or B2RN.com. The Permanent Injunction also does not apply to the website men4rentnow.org so long as Longleg does not use that website in a manner that creates a likelihood of confusion as to Plaintiff's endorsement of or association with that website or any services offered at that website, or Plaintiff's endorsement of or association with services offered at websites linked to the men4rentnow.org website.

Plaintiff Wintice Group, Inc.'s motion for permanent injunction is denied in all other respects.

IT IS FURTHER ORDERED that the Preliminary Injunction (Doc. #37) this Court previously entered in this case, as modified on June 4, 2010 (Doc. #116), otherwise remains in effect pending the outcome of this case.

IT IS FURTHER ORDERED that the parties shall forthwith meet and confer and shall, not later than September 30, 2010, file a proposed joint pretrial order in compliance with the Local Rules of this Court.

DATED: September 3, 2010

_____
PHILIP M. PRO
United States District Judge